Thank you. Okay, case number five, please. Appeal 2126-44, Jose Ageo Luna Vanegas versus Signet Builders. And I hope I did not murder the name. Hello, Mr. Tunham. Good afternoon, Your Honor. Good afternoon. Any time. May it please the court. The outcome of this appeal is controlled by the Supreme Court's decision in the Holly Farms case. That case expressly rejected the notion that the phrase incident to or in conjunction with such farming operations is unambiguous and that one can simply intuit whether a particular job is or is not within that phrase. Does it matter that that case was a Chevron case in an involved Chevron deference? I don't believe so, Your Honor. The court's, the point I'm making that the statute is ambiguous and that the dissent's view that it was unambiguous and common sense just tells you whether this job or that job falls within the statute. That was expressly rejected by the court and I don't think that had anything to do with Chevron deference, it was the court's determination based on the legislative history that the statute itself was ambiguous. So this is a 12B6 dismissal. Correct. Anyway, so I actually thought you might've been thinking of starting with Twombly and Iqbal since we're evaluating a complaint for sufficiency and asking whether this affirmative defense is so clear on the face of the complaint that the case can be disposed of without further ado. Right. And we also, comment on that, but also there is, in fact, an interpretive rule, 29 CFR Section 780.144, which also calls for the totality of the circumstances. Exactly, exactly. And as you answer that question, please forgive me, but if we were to remand, what evidence would you want to develop that would impact whether the affirmative defense apply? Well, in the first place, it's the defendant's affirmative defense. So they're the ones that have the burden to prove it. I would be happy to develop no evidence on this if they don't want to develop evidence on it. But clearly the Supreme Court cases, the Holly Farms case, the DOL regulations show that it's extremely important what the contractual relation was between signet builders and the general contractor, who they were building this animal enclosure for, what it was being built for. There is nothing in the record at the moment that even says that this was for chickens. I mean, the defendant's brief is full about this. This is a animal enclosure for raising chickens, but chickens is not in the plaintiff's complaint. It's not in the record. And whether it was going to be used to confine chickens for slaughter, or which would not be agricultural, even defendants admit that, or whether it was going to be used to confine chickens to be raised, those are critical, factual issues that have to be developed before the exemption, the affirmative defense can be ruled upon. And our position is that Holly Farms comes pretty close to showing that as the complaint stands now, they cannot establish the defense. But the better part of valor is to develop the facts and give them their chance, but give plaintiffs a chance also to show that, indeed, this is not the kind of activity that is covered by the ambiguous exemption. But you're not taking the position, are you, that all construction activity on farms is automatically outside the scope of the exemption, are you? It depends who's doing it. Okay. If a farmer builds a barn with his neighbor, I would expect that that would be within the agricultural exception. But if he hires ABC Construction to come to the property and erect a barn, it is not? Again, it may depend on additional facts. If he hires a general contractor who hires a subcontractor to do concrete work in the construction of a large barn or something, it may not be. The Ninth Circuit held in the Monterey County case that it wasn't, that construction is not agriculture. It is something that, one of the things the Holly Farms case makes very clear is that in order to fall within this narrow exception, the activity has to be part of the farming operation. So why is it, I mean, your opponent notes that 780.136 says the erection of, employees engaged in the erection of silos and granaries are examples of independent contractors who might be engaged in a farm. They might be, but the defendant takes the position that that regulation says that they are agricultural workers and it does not say that. What it says is building a silo may be work on a farm, but you still have to decide whether that work is incident to or in conjunction with the farming operations of that particular farm. And that can get into whether farmers generally build their own silos or whether they hire general contractors and subcontractors to build a much more complex silo. That regulation does not decide. It doesn't flatly say all silos and granaries constructed. Absolutely not. I don't read it to say that either. Do we have any ideas to how large these livestock enclosures are, whether they're prefabricated or largely built on site? Do we have any idea? There is absolutely no evidence in the record with respect to that at all. The only facts that we know on this record is that it's an animal enclosure structure of some kind. And could I add, I mean, it's my understanding that there are plenty of cases that say sort of the processing of fish or the processing of chickens gets beyond the farming stage. Precisely, because see, this is what Holly Farms says. And there's a fish case too, the Idaho trout case. You have to, the work has to be part of the agricultural activity of the farming operation. And in Holly Farms, the line was very precise. The moment the chicken catchers showed up in Holly Farms, the farming operation ended because the farming operation was raising chickens. And when the chicken catchers came to catch the chickens, they weren't being raised. It turned into processing at that point. And at that point, you can't, even though they were on a farm, even though catching the chickens was critical to the farming operation, it wasn't part of the farming operation. And our position is that this structure is being built by a contractor and a subcontractor that who knows who they're even building it for. Is Cygnet's work exclusively for farming clients? That is not in the record. I think if you look at their website, they do all kinds of contracting, not just agriculture. Oh, even that isn't in the record? This literally was a very vanilla overtime complaint. They moved to dismiss. And the only additional fact beyond the very limited facts in the complaint, the defendants tried to offer a declaration from some officer of Cygnet that the district court didn't allow in, although it contained this admission, that they were actually subcontractors, not the original, not the contractor, but who the contractor was and who they had the contract with isn't even in the record. For all we know, this enclosure was being built for some mega chicken operation like Holly Farms. And that the farm on which it was being built had nothing to do with it. There's just nothing in this record to allow this defense to be determined at this point. And that's why our position is it just has to be remanded and discovery and figure out whether they have a basis for their defense. If you used all your time, I will still give you your two minutes that you requested. Thank you very much, Your Honor. You're most kind. Mr. Viau, is that the way you pronounce your name? View, just like it's spelled, Your Honor. View? View, as if it were V-I-E-W. Oh, I see. Yeah, because it is spelled V-I-A-U. Correct. That was a poor attempt at humor. May it please the court. My name is Josh View, and I represent Cignet Builders, Inc. The issue in this case comes down to a fundamental difference between the parties in terms of what we look at in determining whether this secondary agriculture applies to things on farms that may not traditionally be considered farming activities. But I see this as a civ pro one question, whether a 12B6 motion is the correct procedural vehicle for ruling on an 8C affirmative defense under these circumstances. We have tried over and over to discourage that, although occasionally, if it's the statute of limitations, the facts pleaded in the complaint are so clear that there's no point in going further, although even that should be a 12C. But I've looked at this complaint, and I don't see anything on the face of the complaint that makes your defense for you. Well, Your Honor, on the face of the complaint, Luna Venegas admits that he conducted work on farms building livestock containment structures. But there are some livestock containment structures, such as the ones in Holly Farms, that don't count, and there are other livestock containment structures that do count. And so how do we resolve that fact issue based on the complaint? Well, and I don't believe that that's a fact issue that is determinative here, Your Honor. And Holly Farms was different because Holly Farms didn't involve the building of an enclosure. But there are some enclosure, it depends on all of these factors that these regulations are talking about. And I was surprised you didn't have more to say about 780.144, which calls for the character of a practice to be determined by examination and evaluation of all the relevant facts and circumstances, no mechanical isolated factors, et cetera, et cetera. So the competitive relationship, what did the company do? Is it a construction company? What's the purpose? Is this an enclosure for processing? Is this an enclosure for just raising livestock or poultry or whatever it might be? I can think of a hundred questions about this. Well, I think all of those factors and the factors that opponents have raised are irrelevant to the determination. Those all focus on how is Signet structured. No, they don't. I don't see that they're irrelevant at all. They, in fact, are called, 144 is titled as an incident to or in conjunction with the farming operation. So it's telling us how to interpret this limiting language in section 3F. So, because that's what we're looking for. We all know this isn't primary agriculture. We're looking at secondary. And so we have to decide whether the work that Signet is performing is as an incident to or conjunction or in conjunction with farming operations. That's correct, Your Honor. And the way the complaint reads is that it's livestock containment structures. The work is being performed on farms. But you keep saying that as though that answers the question. I'm telling you, there's some livestock containment structures that might be used for the cattle you're about to ship off to the slaughterhouse or the poultry that somebody's about to come in and grab. And like, you're done raising them and other sources. Well, those aren't allegations that were made in the complaint. But are you arguing that every time there's a livestock containment structure being built on a farm that it's incident to or conjunction with? I'm arguing that the work performed on the farm related to the building of a livestock containment structure does meet the definition of secondary agriculture. When you use the words livestock containment structure. So every time that those words are used in a complaint for FLSA, you think the agriculture exception would apply? Well, I think that... That was a yes or no question. Thank you, Judge Wood. Yes, in this case, I think it does apply. But it can't be in this case. Are you saying there are some cases where it might not work? It might not if it were a chicken processing facility, but plaintiff is stuck with the language that he used in his complaint, which is livestock containment structure. He doesn't allege that he was exempt because these containment structures were actually going to be used. But you don't have to anticipate affirmative defenses. That's the whole point. They're affirmative defenses. He doesn't know if you're gonna come in and raise the affirmative defense or not. You're approaching the pleading as though he's got to put all of the facts designed to oppose the affirmative defense in the complaint. And that's just not the law. Well, I agree with you, Your Honor, that that's not the law in terms of the complaint. But if you look at the regulations, the remainder of the regulations that expand upon 780.136, it makes it very clear that a livestock containment structure built on a farm would meet the definition of secondary agriculture. I have all of these regulations in front of me. I wanna know what language you are relying on. Well, if you look at 780.141, that references a silo to store grain. But you don't wanna cut off that sentence too soon because what it says, actually, after it says that the erection of silos and granaries are examples of the types of employees of independent contractors who may be considered employed in practices performed on a farm. But then it goes on to say whether these workers are engaged in agriculture depends, of course, on whether the practices are performed as an incident to or in conjunction with the farming operations. In other words, right back to the core. So it doesn't just create a per se rule that silos and granaries are secondary agricultural activities much less answer this question, which is an enclosure for livestock that may or may not still be involved in the farming phase. Well, and it doesn't focus on the activity of the entity that's performing this work. We don't need discovery to find out what Cignet does or who Cignet contracts with. If you look, there's a very important quote in 780.142. What it looks at is the nature of the farm's business. And livestock containment structure cannot be interpreted to refer to anything except for holding a farm's livestock. It's not a processing facility. It's not holding anyone. It's not holding someone else's grain. And the quote that I've referred to- If the construction of livestock enclosures isn't a job that farmers do at all anymore, given the size, the complexity of the buildings, other than the Amish maybe in modern times, how would the construction of such buildings be any different than the processing of the farm's product? For example, no longer considered agriculture, even though it benefits the farmers. And processing is a different issue. And that's where Holly Farms is distinguished. Processing of poultry specifically is specifically addressed in another regulation, which is 780.125, which talks about in terms of poultry, raising is included in the definition of agriculture. Slaughtering is expressly excluded. And so that's why the term livestock containment facility, which references holding the livestock while it's being raised- Well, it doesn't say while it's being raised, though. You could be holding it, getting it ready for transport to the slaughterhouse. You may be finished raising it. And I wonder why, I mean, the district court thought that this inquiry focused only on the practices performed by the employee, but you need to look at what the worker's employer, here Signet, is engaged in. Is it some separately organized productive activity, not farming? Surely that's Signet. Signet's a subcontractor. It builds things. That's right. And opposing counsel talked about that. It may be different if the farmer were building the structure themselves. There's nothing in the statute or the regulations to support that. It doesn't matter whether Signet is doing it or whether the farmer himself is doing it. I'm not sure you're right, because as Judge Rother was alluding to, the regulations themselves recognize the fact that we're not in the 18th century anymore. There are some things that might have been considered part of farming long ago, but that are now regularly not considered to be part of farming. And those regulations speak to activities that take place that are on the commodity, things like processing. What the regs talk about in terms of looking at and interpreting the term independent productive activity is whether or not some practices are performed in connection with farming operations conducted on the farm, where they're performed must be determined with reference to the purpose of the farmer for whom the practices are performed. There's no reference in those regulations to what is the nature of the entity who's performing those functions. And based on the allegations in the complaint, in this case, Mr. Luna-Venegas worked on a farm building livestock containment structures. But the regs also go on to say that the character of a practice as part of the agriculture activity must be determined by examination and evaluation of all the relevant facts and circumstances. Right. Which here, it was decided based on one paragraph in a complaint of something that they didn't need to allege or anticipate. Well, in addition to being alleged in the complaint, it's also included in the H-2A job order that was submitted to approve Mr. Luna-Venegas' work. But the H-2A visas are clearly broader than 3F. 3F has to be included within them, but they're not limited to 3F. Correct, but it's instructive here because anyone can get approved. It doesn't have to be a farmer to get approved for an H-2A visa application, similar to somebody who doesn't need it. Which is why I would say the fact that he's a holder of an H-2A visa doesn't really advance our discussion very well. Well, it provides guidance in terms of whether or not a non-agricultural entity performing secondary agriculture meets the definition, whether its employees can meet the definition. And that's my point, Your Honor, and I'm out of time. I would leave you all with this, that really the focus is on what the worker is doing on the farm, not on the nature of the entity that's performing the function. Thank you very much. I'm sorry, did I cut you off? You didn't. I think he was finished. Yeah, I thought you were. Thank you very much. Is Mr. Cunningham still in the court? He's rushing up to the podium. Okay, two minutes, please. Just on that last point, the focus has to be on what the worker is doing and the nature of CIGNET is irrelevant. Holly Farms is crystal clear that the nature of the employer is of critical importance. They say that. They endorse the NLRB's, I don't have the quote, but they say we think the NLRB was exactly right when they focused on the nature of the employer as a factor. I mean, there are other factors too. It has to be part of the actual farming operations, not something that happens after the farming is over, or in our case, something that happens before any farming can begin. But you also have to look at the nature of the employer. Is there a contractual relationship between that employer and the farmer? Or is the contractual relationship with some general contractor as it was in the Monterey County case? In other words, there are a whole lot of facts here that we just don't know the answers to. Animal confinement structure. You understand, this was just a complaint. This was not a dissertation on the specific words in the FLSA. When we stated that the plaintiff worked on an animal confinement structure, I mean, that conjures up images from a corral to an enormous industrial plant that processes chickens while holding the live ones waiting to be processed. I mean, we just have no idea what this work really was. And that is critical to deciding whether the defense is a valid one or not. And with that, my time is up. And I will thank you all. And I too want to say, it really has been fun. Thank you so much. Oh my, this is a first, isn't it? Thank you. The case is going to be taken under-